27 C.C.P.A. (Patents)

## VOLLRATH v. McCAULEY.

### Patent Appeal No. 4322.

Court of Customs and Patent Appeals.

July 8, 1940.

Cushman, Darby & Cushman, of Washington, D. C. (Arlon v. Cushman and Carroll J. McGuire, both of Washington, D. C., and D. Howard Painter, of Los Angeles, Cal., of counsel), for appellant.

Robert Watson, of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of the invention defined in the single count in issue

(count 2) to the junior party, John H. McCauley.

The interference is between appellant's reissue application No. 87,594, filed June 26, 1936, and appellee's application No. 691,551, filed September 29, 1933.

Appellant's application is for the reissue of his patent No. 1,851,532, issued March 29, 1932, on an application filed July 22, 1930.

■ Appellee having filed his application subsequent to the issuance of appellant's patent, the burden was upon him to establish priority of invention beyond a reasonable doubt.

■ The invention in issue relates to an electrical discharge tube comprising a sealed glass envelope containing a rare gas and having a filler composed of insulating material, as set forth in the count in issue which reads: "2. A luminous electric discharge device comprising a closed glass tube containing a rare gas and having an electrode of solid material at each end, and a filler in that part of the tube between said electrodes, the filler being composed of pieces of insulating material of geometrical design providing spaces around the pieces for the movement of the gas and affording a tortuous electrical discharge course through that part of the tube containing the filler."

It is unnecessary to state the formal details leading up to the declaration of the interference. It is sufficient to say that the question of the right of appellant to make the claim constituting the count in issue (the count having originated in appellee's application) was made during the motion period. That issue was first determined by the Primary Examiner, who quoted from appellant's patent as follows: "These granules or particles with which the tube is filled may be composed of quartz, glass, or any insulating material which is not destroyed under the influence of the electrical discharge, and they may be of any geometrical shape with either smooth or irregular surfaces. If glass or some other insulating ceramic material is employed, it may have the form of beads or of fragments obtained by crushing larger pieces of the material."—and held that appellant was entitled to make the claim constituting the count in issue.

No evidence was introduced before the Examiner of Interferences relative to the question of the right of appellant to make

the claim constituting the count in issue, and, in accordance with rule 130 of the Rules of Practice in the United States Patent Office, that issue was not decided by the Examiner of Interferences. The Examiner of Interferences, however, considered the evidence of record relative to the activities of the parties and held that, although appellant had conceived the invention sometime during the year 1927, he had failed to establish a successful reduction of it to practice prior to the filing date of his original application (July 22, 1930); that appellee had successfully reduced the invention to practice as early as October 10, 1928; and that, as appellant was not diligent in reducing the invention to practice from immediately prior to October 10, 1928, until he filed his original application (July 22, 1930), appellee was entitled to an award of priority.

Relative to appellee's successful reduction of the involved invention to practice, the Examiner of Interferences stated that appellee's exhibit A, a tube in the form of a capital "R" filled with "fragments of glass tubing loosely filling the space between the electrodes," was successfully operated as early as October, 1928. It appears from the record that the tube referred to was successfully demonstrated in the home of appellee in the presence of the witnesses Alfred Schiller, and William J. Fitzgerald and his wife, Violet Fitzgerald, in October, 1928. Relative to that demonstration, the Examiner of Interferences made the following observation: "A tube answering this description has been introduced as McCauley exhibit A, and McCauley declares that he demonstrated said exhibit to the witnesses Alfred Schiller, William Fitzgerald and Violet Fitzgerald in October of 1928. These witnesses identify exhibit A as the tube demonstrated in October 1928, as well as the written description, exhibit B, dated October 10, 1928 and signed by Schiller and the Fitzgeralds. Another witness, George Bruder, testifies that he put the electrodes and exhaust tube on exhibit A, and fixes the date as prior to 1929 while he was still employed by the Northern Manufacturing Company, but after McCauley had left said company." (Italics ours.)

We have given careful consideration to the evidence of record relative to the successful demonstration of appellee's exhibit A, and are of opinion that the evidence clearly indicates that appellee's exhibit A was successfully operated in October, 1928.

In its decision, the Board of Appeals stated that appellee had established "beyond any reasonable doubt that his Exhibit A was successfully tested by October 10, 1928." The board further stated that "The party Vollrath in his appeal brief [which is not before us] indicates that the party McCauley reduced to practice in the fall of 1928."

It may be observed at this point that count 2 here involved originated in appellee's application, the same being claim 15 thereof.

The tribunals of the Patent Office concurred in holding that appellee's exhibit A corresponds to figures 1 to 5, inclusive, in his application, with which holding counsel for appellee are apparently in agreement. The Board of Appeals held, however, that involved count 2 was intended by appellee to be limited to the embodiment disclosed in figures 6 and 7 of his application.

Relative to figures 6 and 7, appellee states in his application that "Instead of providing a filler composed of irregular insulating or broken pieces of insulating material, these pieces may be of various geometrical forms, one of which is illustrated in Figs. 6 and 7, wherein molded pieces of glass $b^1$, $b^2$, $b^3$, etc., of star shape, are shown in staggered relation, separated to provide intervening gas spaces 4." Appellee further states in his application that the star-shaped pieces of insulating material might be different in form.

In discussing the meaning of the term "geometrical design," as used in count 2, the board said: "* * * we are convinced that generally these words would not be employed in describing haphazardly shaped pieces such as are shown in Fig 4 of the McCauley drawing. We are of the view that it was not and is not unreasonable for the party McCauley to undertake to exclude the embodiment shown in his Figs. 1–5 [of which appellee's exhibit A was an embodiment] by the use of these words and in our opinion this count does not properly read upon the embodiment shown in those figures."—and, accordingly, held that appellee's exhibit A, although

successfully reduced to practice by October 10, 1928, did not conform to count 2 here involved.

Relative to appellant's right to make count 2, the board referred to the hereinbefore quoted excerpt from appellant's patent and said: "The meaning of the language in the above-copied excerpt from the original Vollrath application is perhaps rather difficult to determine. We believe, inasmuch as it is stated that the granules or particles may be of any geometrical shape, this should be accepted as indicating that only granules or particles of geometrical shape are to be employed. In the last sentence of the paragraph both 'beads' and 'fragments obtained by crushing larger pieces' are mentioned. We think it follows that these 'fragments' were regarded as of a geometrical shape. If this be true, then we think that the term 'geometrical' in this paragraph is meaningless and surplusage. The only question which remains as to this paragraph is the reference to 'beads.' Of course, beads are usually of spherical or of some uniform shape which generally would be regarded as geometrical, but they sometimes are of irregular shape. We do not consider, therefore, that the mention of beads in the original Vollrath application entitles this party to claim pieces of geometrical design. It is our opinion that count 2 does not read upon the disclosure of the party Vollrath."

The question of the meaning to be given the term "geometrical design," as used in count 2, has given us no little concern. It is obvious from the board's decision that the board considered that term, as used in the count, ambiguous, and, accordingly, interpreted it in the light of appellee's application in which the count originated.

We have given the arguments of counsel for appellant careful consideration, but are of opinion that the board's interpretation of the term "geometrical design" is correct, and that appellant is not entitled to make the claim constituting the count in issue.

The decision of the Board of Appeals is affirmed.

Affirmed.